# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| E&F PAVING COMPANY, LLC, | |
| Plaintiff, | No. C24-5-LTS-MAR |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| MCC IOWA LLC, d/b/a Mediacom, | |
| Defendant. | |

## I. INTRODUCTION

This case is before me on cross-motions for summary judgment. Defendant MCC Iowa LLC, d/b/a Mediacom (Mediacom), has filed a motion (Doc. 24) for summary judgment. Plaintiff E&F Paving Company LLC (E&F) has filed a resistance (Doc. 26) and Mediacom has filed a reply (Doc. 27) as well as a response (Doc. 28) to E&F's statement of additional undisputed material facts. E&F has also filed a motion (Doc. 29) for summary judgment. Mediacom has filed a resistance (Doc. 30) and E&F has filed a reply (Doc. 31). Oral argument is not necessary. *See* Local Rule 7(c).

## II. PROCEDURAL HISTORY

On January 16, 2024, E&F filed a complaint (Doc. 1) against Mediacom alleging claims of negligence and negligence per se arising out of Mediacom's alleged failure to promptly relocate its equipment following an order by the City of Cedar Rapids (the City) so that E&F could timely complete its construction project. E&F asserts federal subject matter jurisdiction under 28 U.S.C. § 1332 based on diversity of citizenship. Doc. 1 at 2, ¶ 5. Mediacom filed an answer (Doc. 8) denying the claims and asserting various affirmative defenses, including the economic loss doctrine. Trial is scheduled to begin August 25, 2025.

### III.   RELEVANT FACTS[1]

The following facts are undisputed unless noted otherwise. Mediacom is a cable service provider with underground utilities within the City's infrastructure. On or about July 23, 2021, E&F entered into a public construction contract with the City for the widening, reconstruction and improvement of 6th Street SW, from 76th Avenue and continuing south approximately 2000 yards (the Project). Mediacom is not a party to that contract. E&F and Mediacom did not enter into any contracts related to the Project. Cedar Rapids Municipal Code Chapter 9A is a City Ordinance that governs right-of-way use in the City, including section "j" that discusses the relocation or removal of equipment. E&F claims this Ordinance provides a private right of action.[2] Mediacom asserts this Ordinance does not provide a private cause of action and further asserts that Mediacom does not owe a legal duty to any contractor hired by the City.

Mediacom was issued a "Certificate of Franchise Authority" on February 14, 2008, granting it the right to "use and occupy the public right-of-way in the delivery of cable service, subject to the laws of the State of Iowa, including the police powers of municipalities in which the service is delivered." The City repeatedly requested that Mediacom relocate its facilities that interfered with the Project. The City informed Mediacom that the proposed start date for the project was July 2021.

On March 3, 2022, the City informed Mediacom that the next phase of the Project was anticipated to start on March 21, 2022, and that liquidated damages of $10,000.00 per day were included in the contract for this phase of work.[3] Mediacom did not relocate

---

[1] For reasons that will become clear, the facts discussed herein are limited to Mediacom's motion for summary judgment.

[2] E&F also contends a duty of care is owed by Mediacom "under the tort of negligent providing of services." Doc. 26-2.

[3] Mediacom notes that the liquidated damages provision was pursuant to E&F's contract with the City and that there is no contract between E&F and Mediacom. Doc. 28 at 2.

2

its equipment throughout March 2022, despite City orders to do so. Specifically, the City sent an email on March 25, 2022, stating, "Mediacom's cable has been on the ground since October 20th, 2021. Our contractor's next activity is to excavate and grade the entire site within the ROW limits and Mediacom's line laying on the ground is impacting this work." Doc. 28 at 2.

On May 5, 2022, the City sent another email to Mediacom requesting a status on the utility relocation because the City had not heard back from Mediacom. The City noted that Mediacom's equipment was still in conflict with the City's project and the City had been trying to coordinate the relocation for over 12 months.[4]

Mediacom did not relocate its equipment until May 20, 2022. E&F alleges it incurred money damages in the amount of $231,583.00 due to Mediacom's failure to timely relocate its utilities. *See* Docs. 24-2; 26-2; 28.

## IV. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

---

[4] Mediacom admits receiving such an email but notes that E&F has not submitted competent proof under Rule 56(c).

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to

determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996). On cross motions for summary judgment, the "court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed. 1998).

## V.     ANALYSIS

### A.    *Mediacom's Motion*

Mediacom argues it is entitled to summary judgment on E&F's claims because (1) they are barred by the economic loss doctrine, (2) Mediacom did not owe E&F a duty and (3) the Ordinance in question does not create a private right of action. I will address each argument in turn.

#### 1.    *Economic Loss Doctrine*

"As a general proposition, the economic loss rule bars recovery in negligence when the plaintiff has suffered only economic loss." *Annett Holdings, Inc. v. Kum & Go, L.C.*, 801 N.W.2d 499, 503 (Iowa 2011).[5] Stated another way, "a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Neb. Innkeepers, Inc. v. Pittsburgh-Des Moines Corp.*, 45 N.W.2d 124, 126 (Iowa 1984) (citing *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309 (1927)). The rule applies even if there is no contractual privity between the parties. *Annett Holdings*, 801 N.W.2d at 504.

---

[5] Neither party suggests that the substantive law of any state other than Iowa should apply to E&F's claims.

5

In *Annett Holdings*, Annett and Comdata entered into a contract, as did Comdata and Kum & Go. *Annett Holdings*, 801 N.W.2d at 502. Annett and Comdata's agreement provided that Comdata would supply cards that could be used by Annett employees to purchase fuel and obtain cash advances at Comdata authorized service centers. *Id.* at 501. Annett agreed to accept full responsibility for all purchases made with those cards, including any unauthorized or fraudulent uses. *Id.* Comdata's written contract with Kum & Go provided that Kum & Go service centers would lease a Comdata terminal for Comdata card transactions.

An employee of one of Annett's subsidiaries used the Comdata terminal to steal money by entering fuel purchases on the Comdata terminal and submitting cash advance slips printed by the machine to Kum & Go clerks, who paid the individual in cash. *Id.* After the individual was caught, Annett sued Kum & Go alleging negligence and breach of contract for its monetary losses through the theft. *Id.* at 502. Annett alleged that Kum & Go was negligent in providing cash to the individual because he did not have actual or apparent authority to receive cash back on Comdata transactions. It also alleged it was an intended third-party beneficiary of the contract between Kum & Go and Comdata and Kum & Go had breached the contract by failing to comply with its procedures. Kum & Go argued the negligence claim was barred by the economic loss rule and, in any event, it owed no duty to Annett. *Id.* The Court concluded that Annett's cause of action had characteristics that brought it within the scope of the economic loss rule and did not fall within any of the recognized exceptions or qualifications. *Id.* at 504. It reasoned:

> When parties enter into a chain of contracts, even if the two parties at issue have not actually entered into an agreement with each other, courts have applied the "contractual economic loss rule" to bar tort claims for economic loss, on the theory that tort law should not supplant a consensual network of contracts.

*Id.* As applied to the facts, the Court explained:

> Here Annett agreed with Comdata that it would be "fully responsible" for the fraudulent or unauthorized use of credit cards. Annett knew that

6

> Comdata would be entering into agreements with service centers, that Comdata would be reimbursing service centers for charges made to the credit cards, and that Comdata would in turn expect reimbursement from Annett. Also, Annett had the capacity to prevent fraudulent or unauthorized use by its employee: Its subsidiary TMC received a daily report of [the employee's] transactions, and as soon as a new fuel manager took over, that person noticed the suspicious activity immediately. It is difficult to see why a tort remedy is needed here. Annett contracted to assume certain risks of financial loss and had the ability to minimize those risks.

*Id.* at 505. The Court affirmed summary judgment in favor of Kum & Go on Annett's negligence claim based on the economic loss doctrine.

Mediacom argues that the current case falls within the framework established by *Annett Holdings* because any issue E&F has with respect to its contractual payment from the City should result in a suit against the City, not Mediacom. E&F argues that the rationale of the economic loss doctrine is to prevent (1) the tortification of contract law and (2) potentially limitless liability and that neither is present in this case. It notes that it did not have a contract with Mediacom and argues that because Mediacom's utility relocation was not related to anyone contracting with Mediacom, E&F does not have a network of contracts through which to seek payment. It also argues this case does not involve potentially unlimited liability because E&F is part of a very limited class and Mediacom was aware of the purpose for which relocation was required and could easily weigh the consequences of failing to relocate its facilities.

E&F relies on *Allied Manatts Grp., LLC v. Qwest Corp.*, No. 3:18-CV-0020, 2020 WL 13553318, at *1 (S.D. Iowa 2020), to argue that a utility company's duty to provide accurate information on the existence of its facilities within a road construction project should extend to a duty to timely relocate its facilities for such a project. However, *Allied Manatts* involved a negligent misrepresentation claim and thus has little relevance here. E&F also cites the Restatement of Torts to argue that the basis of liability is the same for negligent misrepresentation as negligent performance of services.

7

Under established Iowa law, the economic loss doctrine clearly bars E&F's claims. E&F has suffered only economic harm. Iowa has recognized only three exceptions to the economic loss doctrine: (1) "actions asserting claim of professional negligence against attorneys and accountants," (2) "negligent misrepresentation claims" and (3) "when the duty of care arises out of a principal-agent relationship." *Annett Holdings*, 801 N.W.2d at 504. None of those recognized exceptions even arguably apply here.

In addition, the policy rationales of the economic loss doctrine are squarely present in this case. First, a chain of contracts exists, as E&F had a contract with the City and the City had a contract (the Certificate of Franchise Authority) with Mediacom. Thus, any failure to perform, and the consequences thereof, should have or could have been addressed by contract. The concern of potentially limitless liability also applies. While E&F argues there is no potential for limitless liability in this particular case, the rationale is related to a broader concern of an expansion in the law under which numerous actors could be held liable, despite the absence of any contract, if purely economic loss is recognized as an "injury," because "[s]tand-alone economic loss often spreads without limit." Dan B. Dobbs, *An Introduction to Non-Statutory Economic Loss Claims*, 48 Ariz. L. Rev. 713, 715 (2006).

The Iowa Supreme Court has not recognized an exception to the economic loss doctrine based on the circumstances present here, or based on any similarity between "negligent misrepresentation" and "negligent performance of services" under the Restatement (Third) of Torts. In this diversity of jurisdiction case, it is this court's task to apply established Iowa law, as announced by the Iowa Supreme Court, not to change or expand Iowa law. *See, e.g., Northern Oil and Gas, Inc. v. EOG Resources, Inc.*, 74 F.4th 899, 904 (8th Cir. 2023).[6] Under the economic loss doctrine, as construed and

---

[6] The Eighth Circuit favorably quoted *Ryan v. Royal Ins. Co. of Am.*, 916 F.2d 731, 744 (1st Cir. 1990), for the proposition that "litigants who reject a state forum in order to bring suit in federal court under diversity jurisdiction cannot expect that new trails will be blazed." *Northern Oil*, 74 F.4th at 904.

applied by the Iowa Supreme Court, Mediacom is entitled to summary judgment on E&F's claims.

### 2. Alternative Arguments

Even if the economic loss doctrine did not apply to E&F's claims, those claims would fail as a matter of law for other reasons. Mediacom argues that it owed no duty to E&F pursuant to the City's Ordinance. It also argues that the Ordinance (Municipal Code Chapter 9A) does not create a private cause of action for E&F.

E&F relies on *Allied Manatts* to argue that Mediacom had a pecuniary interest in relocating its equipment and therefore owed a duty of care to the contractors of the City's project. It argues that much like the telecommunications company in *Allied Manatts*, Mediacom has a pecuniary interest in relocating its equipment so it could continue providing services to its customers and not face threats of damaged equipment and potentially losing profits. However, this consideration of whether there is a "pecuniary interest" creating a duty is unique to negligent misrepresentation cases. *See Dinsdale Constr., LLC v. Lumber Specialties, Ltd.*, 888 N.W.2d 644, 652 (Iowa 2016) ("Although we have not yet applied the tort [of negligent misrepresentation] beyond persons in the course of their business or profession of supplying information, section 552(1) of the Restatement includes persons who supply false information 'in any other transaction in which [they have] a pecuniary interest.'").[7]

While E&F argues that the tort of negligent performance of services similarly recognizes a duty based on this pecuniary interest, E&F has not alleged that claim in its complaint.[8] *See* Doc. 1. Additionally, as Mediacom points out, the Restatement

---

[7] Section 552(1) of the Restatement (Second) of Torts addresses the tort of negligent misrepresentation and specifically the topic of "Information Negligently Supplied for the Guidance of Others."

[8] Nor would this claim apply to the facts alleged here, as any service Mediacom performs for others, and on which others rely, is not the relocation of equipment. *See* Restatement (Third) of

9

specifically rejects a scenario that is similar to the one here. *See* Restatement (Third) of Torts § 6, note b ("There is no liability in tort . . . when the owner of a construction project sues a subcontractor for negligence resulting in economic loss. Nor is liability found when one subcontractor is sued by another because the negligence of the first drives up the costs of the second. A subcontractor's negligence in either case is viewed just as a failure in the performance of its obligations to its contractual partner, not as the breach of a duty in tort to other subcontractors on the same job, or to the owner of the project."). Even without the economic loss doctrine, E&F's negligence claims would fail because Mediacom owed no duty to E&F.

With regard to whether Cedar Rapids Municipal Code Chapter 9A creates a private cause of action, Mediacom notes that a "private statutory cause of action exists 'only when the statute, explicitly or implicitly, provides for such a cause of action.'" *Mueller v. Wellmark, Inc.*, 818 N.W.2d 244, 254 (Iowa 2012) (quoting *Sanford v. Manternach*, 601 N.W.2d 360, 371 (Iowa 1999)). In determining whether the legislature intended to create such a right or remedy, Iowa courts consider the following four factors:

(1) whether the plaintiff is a member of the class for whose special benefit the statute was enacted;

(2) legislative intent, either explicit or implicit, to create or deny a remedy

(3) whether a private cause of action is consistent with the underlying purpose of the statute

(4) whether the implication of a private cause of action will intrude into an area over which the federal government has exclusive jurisdiction or which has been delegated exclusively to a state administrative agency.

---

Torts § 6 (describing the tort as: "[a]n actor who, in the course of his or her business, profession, or employment, or in any other transaction in which the actor has a pecuniary interest, performs a service for the benefit of others is subject to liability for pecuniary loss caused to them by their reliance upon the service, if the actor fails to exercise reasonable care in performing it.").

10

*Seeman v. Liberty Mut. Ins. Co.*, 322 N.W.2d 35, 41-43 (Iowa 1982).

E&F argues that the Iowa Supreme Court has recognized that negligence per se applies to local ordinances. *See Winger v. CM Holdings, L.L.C.*, 881 N.W.2d 433, 449 (Iowa 2016). It contends the Ordinance at issue implicitly provides for a private cause of action and that the purpose of the Ordinance is to keep the right of ways free from unnecessary blockages or encumbrances. E&F further contends that it is a representative of the City by way of its contract to perform work for the City and thus may recover damages caused by the delay.

Mediacom counters that the Ordinance gives the City "the ability to charge for costs associated with the use, occupancy, work and obstruction, in the right-of-way . . . ," meaning that while the City may charge Mediacom, a third party like E&F may not. Mediacom argues that E&F is not a "representative" of the City by performing contracted work such that it steps into the City's shoes and may enforce the City code. Mediacom further argues that the Ordinance was enacted to protect the citizens of Cedar Rapids and a contractor doing work for the City does not fall within the class of persons the Ordinance was created to protect. As such, Mediacom contends that the negligence per se claim fails as a matter of law.

Chapter 9A.01(a) describes the purpose of the Ordinance and states "[t]he city recognizes that it holds the right-of-way within its geographical boundaries as an asset in trust for its citizens." Doc. 24-3 at 11. Therefore, the public, or citizens of Cedar Rapids are the class for whose benefit the Ordinance was enacted. Section (j) covers "Relocation or removal of equipment; payment of city costs due to improper location of equipment" and states:

> Permittees, franchisees, licensees, and lessees shall promptly and at their own expense, with due regard for seasonal working conditions, permanently remove their equipment or relocate their equipment within the right-of-way, whenever the director orders such removal or relocation, and shall at their sole expense restore the right-of-way to its proper and required

11

condition pursuant to the city's utility accommodation and street restoration specifications.

*Id*. at 19-20. It also states:

> If a city work crew or a city contractor encounters equipment in the right-of-way . . . [i]n a location other than the location specified therefor by the director . . . and if such improper location of equipment . . . prevents or delays the performance of work under contract, the permittee, franchisee, licensee, or lessee whose improperly placed equipment occasioned such delay in performance or nonperformance shall be required to reimburse the city for all outlay and expense thereby incurred by the city.

*Id*. Under the express language of the Ordinance, Mediacom may be liable only to the City with regard to costs associated with any delay from relocation of its equipment. The Ordinance does not provide a remedy for a contractor.

I agree with Mediacom that, if anything, the Ordinance provides that any remedy is an issue between the contractor and the City and/or between the City and Mediacom. Nothing in the Ordinance empowers a contractor to directly pursue an action against a permittee, franchisee, licensee or lessee in the right-of-way for failure to timely move equipment. E&F's claims fail for this alternative basis, as well.

### B.  *E&F's Motion*

Because Mediacom is entitled to judgment as a matter of law on each of E&F's claims, E&F's motion for summary judgment must be denied.

### VI.  CONCLUSION

For the reasons stated herein:

1. Mediacom's motion (Doc. 24) for summary judgment is **granted in its entirety.**

2. E&F's motion (Doc. 29) for summary judgment is **denied**.

12

3.	This action is hereby **dismissed** and judgment **shall enter** in favor of Mediacom and against E&F.

4.	The trial of this case, currently scheduled to begin August 25, 2025, is hereby **canceled**.

5.	The Clerk of Court shall **close this case**.

**IT IS SO ORDERED** this 2nd day of April, 2025.

_____
Leonard T. Strand
United States District Judge